UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NANCY J. SHERMAN,

                        Plaintiff,

        – against –

TOWN OF CHESTER, TOWN BOARD OF THE
TOWN OF CHESTER, and PLANNING BOARD
OF THE TOWN OF CHESTER,

                        Defendants.

---

**OPINION AND ORDER**

12 Civ. 647 (ER)

RAMOS, D.J.:

        This matter is once again before the Court on a motion to dismiss brought by the

Defendants Town of Chester, New York ("the Town"), the Town Board of the Town of Chester,

and the Planning Board of the Town of Chester.[1]  (Doc. 21).  Steven M. Sherman,[2] a real estate

developer, initially filed this suit on January 12, 2012, in the Supreme Court for Orange County,

New York, generally alleging that for over the previous decade, the Town wrongfully obstructed

his efforts to develop MareBrook, a 398 acre parcel of land he purchased in 2001 for $2.7

million.  Compl. ¶¶ 5, 39, 353.[3]  Specifically, Plaintiff claims that by implementing a series of

amendments to the local zoning laws that specifically targeted his project, and otherwise

---

[1] This Opinion generally refers to "the Town" rather than "Defendants" because the Planning Board and the Town Board are not suable entities.  *See, e.g.*, *S.W. ex rel. J.W. v. Warren*, 528 F. Supp. 2d 282, 302–03 (S.D.N.Y. 2007). Plaintiff argues that he must include these arms of the Town because he has an Article 78 claim.  *See* Pl.'s Mem. 27. However, Plaintiff can no longer prosecute his Article 78 claim in this action because it has been removed to federal court.  *See, e.g.*, *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 464 (S.D.N.Y. 2008) ("An Article 78 proceeding must be brought in New York State court.").  All claims against the Town Board and Planning Board are therefore dismissed.

[2] Mr. Sherman passed away in October 2013.  His widow, Nancy J. Sherman has replaced him as the Plaintiff.  For conformity with past decisions, this Court refers to refers to Plaintiff by using masculine pronouns.

[3] Defendants removed the action to this Court on January 26, 2012.  Notice of Removal.  (Doc. 1).

engaging in conduct that frustrated his ability to even begin development, the Town violated his rights to freedom of religion, freedom to petition, substantive due process, procedural due process, equal protection, and his right not to have his property taken without just compensation under the federal and New York state constitutions.

Pending before the Court is the Town's renewed motion to dismiss following the Second Circuit's reversal of this Court's determination that Sherman's federal takings claim was unripe. The Town argues that all of Sherman's remaining claims, both federal and state, are time barred, and even if not, fail to state a claim for relief.  For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

Also before the Court is a motion to intervene brought by Laroe Estates, Inc. ("Laroe"), on the basis that as holder of "equitable title" to MareBrook, Laroe is the owner of the property and therefore has standing to intervene as of right, or at least permissively, under Federal Rule of Civil Procedure 24 (a) and (b), respectively.  (Doc. 24).  Laroe's motion is DENIED.

## I.   Background[4]

The background of this case is set forth in great detail in this Court's March 2013 Order, as well as the Second Circuit's decision in *Sherman v. Town of Chester*, 752 F.3d 554 (2014), familiarity with which is assumed.  Thus, the Court will only state facts necessary for disposition of the instant motions.

As originally conceived, the MareBrook project was to include 385 residential housing units, a golf course, an equestrian facility, baseball fields, tennis courts, a clubhouse and an on-site restaurant.  Compl. ¶ 10.  By way of general background, Sherman claims that the Town wrongfully prevented him from developing MareBrook because it variously wanted:  (1) to make

---

[4] The following facts are based on the allegations in the SAC, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

MareBrook a "*de facto* nature preserve," *id.* at ¶¶ 21, 30, 285, 299; (2) to retaliate against him for instituting several lawsuits against the Town over the development of MareBrook, *id.* at ¶¶ 26–29, 61, 225, 231, 241, 262; and (3) to discriminate against him because he is Jewish, one of his business associates is Jewish, and Town residents are worried about MareBrook becoming a Hasidic community, *id.* ¶¶ 31–32, 222, 225, 307–24, 326.  Plaintiff concludes that the Town's obstruction shows that a "[s]ecret 'final decision'" was made to block him from developing his property.  *Id.* at ¶ 56.

The Town filed its first motion to dismiss on May 7, 2012.  (Doc. 6).  By Opinion and Order issued on March 20, 2013 (the "March 2013 Order") (Doc. 14), the Court granted the motion, finding that each of Sherman's federal constitutional claims were unripe pursuant to *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and declining supplemental jurisdiction over Sherman's state claims.  Sherman appealed.[5]

As relevant to this motion, Sherman first filed suit in federal court on May 5, 2008.  *See Sherman v. Town of Chester et al.*, No. 08-civ-4248 ("*Sherman I*"); Compl. ¶ 218.  In that lawsuit, as in the instant one, he alleged a federal takings claim.  As the Second Circuit observed, Sherman voluntarily dismissed that action on January 6, 2012,[6] in response to the Town's argument that the takings claim was unripe because Sherman had not alleged that he sought and was denied just compensation by an available state procedure.  *Sherman*, 752 F.3d at 563-64.  He then re-filed his federal takings claim and his state law claims for compensation in Supreme

---

[5] Sherman also made facial and as-applied challenges to a Town law that requires developers to pay the Town's consultants' fees, arguing that it violated state law and Plaintiff's due process rights.  In the March 2013 Order, the Court dismissed those claims, finding that Sherman was accorded sufficient procedure.  March 2013 Order at 18-24. Sherman did not appeal that finding.

[6] *See* Compl. ¶ 218 fn.9.

Court, Orange County, several days later on January 12, 2012.  It was that subsequently filed lawsuit that the Town removed to this Court on January 26, 2012.

In *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014), the Second Circuit reversed this Court's determination that Sherman's federal takings claim was unripe.  Applying the test stated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), the Circuit Court found that Sherman had stated a non-categorical taking.  *Sherman*, 752 F.3d at 566.  In reaching that conclusion, the Circuit found that the Town's actions "effectively prevented Sherman from making any economic use of this property," interfered with his reasonable investment-backed expectations, and "singled out [his] development, suffocating him with red tape to make sure he could never succeed in developing MareBrook."  *Id.* at 565.  The Circuit Court then determined that the takings claim was not barred by the three year statute of limitations applicable to claims brought under 42 U.S.C. § 1983.  Specifically, the Circuit Court rejected the Town's position that only actions taking place within three years of filing of the complaint should be considered:

> But that argument would mean that a government entity could engage in conduct that would constitute a taking when viewed in its entirety, so long as no taking occurred over any three-year period. We do not accept this.  The Town used extreme delay to effect the taking.  It would be perverse to allow the Town to use that same delay to escape liability.
>
> The only way plaintiffs in Sherman's position can vindicate the Supreme Court's admonition in *Palazzolo* [*v. Rhode Island,* 553 U.S. 606 (2001)], that government authorities 'may not burden property by imposition of repetitive or unfair land-use procedures' is to allow to them aggregate acts that are not individually actionable. *See* 533 U.S. at 621.  A claim based on such a 'death by a thousand cuts' theory requires a court to consider the entirety of the government entity's conduct, not such a slice of it. [. . .] [B]ecause Sherman alleges that at least one of the acts comprising the taking occurred within three years of the filing of the case, his claim is not time barred.

4

*Id.* at 566-67.

While the Circuit Court did not subject Plaintiff's other constitutional claims—which allege First Amendment, Equal Protection and Due Process violations—to the same analysis, it held that to the extent they had been dismissed solely on ripeness grounds, this Court's ruling can no longer stand.  *Id.* at 567.  Accordingly, it remanded those claims for the purpose of determining whether Sherman has stated a claim.  Finally, the Circuit Court vacated this Court's decision remanding the state law claims because of its determination that Sherman had plausibly stated at least one federal claim.  *Id.* at 568.[7]

## II.   Discussion

### A.  12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer

[7] The Circuit Court affirmed this Court's decision dismissing (1) Plaintiff's procedural due process claims based on the Town's consultants' fee law and (2) 42 U.S.C. §1981 claims, and denying as futile Plaintiff's request to add a § 1982 claim.  Sherman, 752 F.3d at 567.

possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B. **Sherman's Federal Constitutional Claims**

As a preliminary matter, the Court notes that Sherman overly relies on the Second Circuit's conclusion that his takings claim constitutes a continuing violation. He assumes that each of his federal constitutional claims are saved by the same analysis. He is mistaken. Under the continuing violation doctrine, "[w]here a plaintiff can demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was part of the violation, even conduct that occurred outside the limitations period." *Ruane v. Cnty. of Suffolk*, 923 F.Supp.2d 454, 459 (E.D.N.Y.2013) (internal quotation marks omitted). "[C]ourts of this circuit consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances." *Id*. (quoting *Blankman v. Cnty. of Nassau*, 819 F.Supp. 198, 207 (E.D.N.Y. 1993)). Where particular acts serve to put a plaintiff on notice of his claim, the continuous violation doctrine is inapplicable,

even if there were subsequent acts constituting a violation.  *See Kellogg v. N.Y. State Dep't of Corr. Servs.*, No. 07–CV–2804, 2009 WL 2058560, at *1 (S.D.N.Y. July 15, 2009) ("[T]he continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day."); *see also Libbey v. Vill. of Atl. Beach*, 982 F.Supp.2d 185, 212, No. 13-CV-2717, 2013 WL 5972540, at *20 (E.D.N.Y. Nov. 04, 2013) (no continuing violation even though allegations "span several years" where time-barred conduct was a discrete act occurring on a specific date).

Here, the Second Circuit found that the takings claim was continuing because the facts of this case involved "an unusual series of regulations and tactical maneuvers that constitute a taking when considered together, even though no single component is unconstitutional when considered in isolation."  *Sherman*, 752 F.3d at 567.  As a result, the Court concluded, it could not be said that Sherman's property was 'taken' on any particular day."  *Id.*  That determination does not compel the conclusion that each of his other federal constitutional claims are also continuing violations.  Certainly, the Circuit Court did not suggest as much.  The only finding of general application made by the Circuit Court was that because the takings claim was ripe, the balance of his constitutional claims were also ripe for the same reason.  *Id.*  The Circuit Court remanded for the limited purpose of determining whether those allegations stated a claim.  Therefore, each claim must be considered individually.

The parties agree that a three year statute of limitations applies to Sherman's federal constitutional claims.  *See* Mem. L. Supp. Def.'s 2d. Mot. Dismiss ("Def.'s Mem.") (Doc. 23) at 17-18; Mem. L. Opp. Def.'s 2d. Mot. Dismiss ("Pl.'s Mem.") (Doc. 33) at 4; *see also Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x. 672, 674 (2d Cir. 2009) (summary order) (the statute of limitations for a § 1983 action arising in New York is three years).  Under federal law,

a claim arising under § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).  Accordingly, the Town argues that because this action was filed on January 12, 2012, any cause of action that accrued before January 12, 2009, is barred.  Sherman, however, argues that the limitations period should be measured by reference to the filing date of *Sherman I*—May 5, 2008—such that any claim that accrued on or after May 5, 2005, is timely.  More broadly, Sherman argues that because the Second Circuit determined that his takings claim constituted a "continuous violation," *Sherman*, 752 F.3d at 566-67, the balance of his federal claims necessarily constitute continuous violations as well.  According to Sherman, therefore, any act comprising a violation that occurred on or after May 5, 2005, is timely, even if the violation began earlier.

     i.     *The Tolling Provision of Section 1367(d)*[8]

     Sherman argues that because he voluntarily dismissed his federal complaint in *Sherman I*, which included pendent state causes of action, the tolling provision of 18 U.S.C. §1367(d) applies to his claims.  Section 1367(d) of Title 28 expressly provides in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. [. . .]

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

---

[8] The Circuit Court, having determined that Sherman's takings claim constituted a "continuous violation," declined to reach the issue of whether the limitations period is tolled under § 1367(d).  *Sherman*, 752 F.3d at 567.

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after ***the dismissal* of the claim under subsection *(a)***, unless State law provides for a longer tolling period.

28 U.S.C. §1367 (emphasis added).

At first glance, the text of subsection (d), on its face, would appear to provide that *any* other claim that is dismissed at the same time as or after the dismissal of the pendent state claim *shall be tolled*. Fed. R. Civ. P. §1367(d). Upon closer reading, however, there is an ambiguity in the statute that has created substantial confusion concerning whether the tolling provision provided in subsection (d) applies *only* to those pendent claims dismissed pursuant to one of the four circumstances described in subsection (c), or whether it also applies to situations where the pendent claims were dismissed for any other reason, for example, as here, voluntarily pursuant to Fed. R. Civ. P. 41. *See*, 13D Wright, Miller, et al., *Federal Practice and Procedure* § 3567.4 (3d ed. 2008) ("Wright & Miller") (noting that the confusion is the result of "poor drafting").

In *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533 (2002), the Supreme Court analyzed whether § 1367(d) applied to dismissals of claims not specifically listed in § 1367(c), acknowledging the lack of clarity in the statute. In that case the underlying dismissal was based on the defendant's Eleventh Amendment immunity. The Court determined that the tolling

provision did not apply.  The Court did so in part because Congress did not state clearly that the

statute should apply to dismissals based on grounds other than those specifically enumerated in

§ 1367(c):

> The question then is whether § 1367(d) states a clear intent to toll the limitations period for claims against nonconsenting States that are dismissed on Eleventh Amendment grounds.  Here the lack of clarity is apparent in two respects. With respect to the claims the tolling provision covers, one could read § 1367(d) to cover any claim "asserted" under subsection (a), but we have previously found similarly general language insufficient to satisfy clear statement requirements.  For example, we have held that a statute providing civil remedies for violations committed by "'*any* recipient of Federal assistance'" was "not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment" even when it was undisputed that a state defendant was a recipient of federal aid.  *Atascadero*, 473 U.S., at 245–246 [] (quoting 29 U.S.C. § 794a(a)(2) (1982 ed.) (emphasis in original)).  Instead, we held that "[w]hen Congress chooses to subject the States to federal jurisdiction, it must do so specifically." 473 U.S., at 246 [].  Likewise, § 1367(d) reflects no specific or unequivocal intent to toll the statute of limitations for claims asserted against nonconsenting States, especially considering that such claims do not fall within the proper scope of § 1367(a) as explained above.
>
> With respect to the *dismissals* the tolling provision covers, one could read § 1367(d) in isolation to authorize tolling regardless of the reason for dismissal, but § 1367(d) occurs in the context of a statute that specifically contemplates only a few grounds for dismissal. The requirements of § 1367(a) make clear that a claim will be subject to dismissal if it fails to "form part of the same case or controversy" as a claim within the district court's original jurisdiction.  Likewise, § 1367(b) entails that certain claims will be subject to dismissal if exercising jurisdiction over them would be "inconsistent" with 28 U.S.C. § 1332 (1994 ed. and Supp. V).  Finally, § 1367(c) (1994 ed.) lists four specific situations in which a district court may decline to exercise supplemental jurisdiction over a particular claim. Given that particular context, it is unclear if the tolling provision was meant to apply to dismissals for reasons unmentioned by the statute, such as dismissals on Eleventh Amendment grounds.  *See Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 [] (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").  In sum, although § 1367(d) may not clearly exclude tolling for claims against nonconsenting States dismissed on Eleventh Amendment grounds, we are looking for a clear statement of what the rule includes, not a clear statement of what it excludes.  *See Gregory, supra,* at 467 []. Section 1367(d) fails

> this test.  As such, we will not read § 1367(d) to apply to dismissals of claims against nonconsenting States dismissed on Eleventh Amendment grounds.

*Id.* at 544-46 (emphasis in original); *see also*, Wright & Miller § 3567.4 ("It seems that Congress intended [§1367(d)] to apply only to dismissals under §1367(c).  Its inability to say so clearly creates confusion and wasteful litigation.")

Similarly, in one of only three cases identified by the parties or the Court concerning the application of §1367(d) in the context of the voluntary dismissal, the district court for the Southern District of Ohio referenced the legislative history of the § 1367 and noted "§ 1367(d) 'provides a tolling of statutes of limitations for any *supplemental claim* that is dismissed *under this section* and for any other claims in the same action voluntarily dismissed at the same time or after the supplemental claim is dismissed.'"  *Parris v. HBO & Co.*, 85 F. Supp.2d 792, 796 (S.D. Ohio 1999) (quoting H.R.Rep. No. 734, 101st Cong., 2d Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6876) (emphasis added).  In accordance with that legislative history, the court reasoned that Congress did not intend the phrase "'the dismissal' to include dismissal of the supplemental state claim by *any* procedure but, rather, dismissal pursuant to §1367(c), which provides four circumstances under which the district court may decline to exercise supplemental jurisdiction[.]"  *Id.*[9]  The Court therefore found that "for § 1367(d) to be applicable, the supplemental claim brought pursuant to § 1367(a) must have been dismissed by the court pursuant to § 1367(c)."  *Id.* at 797.  Because the "[p]laintiff 's state law claims were voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1) . . . and not pursuant to 28 U.S.C. § 1367(c)[,] the

---

[9] The sole case identified by the Court that affirmatively found that voluntary dismissals are entitled to the benefit of §1367(d) tolling, also from the Southern District of Ohio, provides little analysis.  *See Naragon v. Dayton Power & Light Co.*, 934 F. Supp. 899 (S.D. Ohio 1996).  The third case, *Zychek v. Kimball International Marketing, Inc.*, 2006 WL 1075452 (April 21, 2006 D. Idaho), adopts the reasoning of *Parris*.

[p]laintiff cannot avail himself of 1367(d)."  *Id.*

Based on the foregoing authority,[10] the Court finds that in order for Sherman to be entitled to the benefit of the tolling provision of § 1367(d), *Sherman I* must have been dismissed pursuant to § 1367(c).  Because there is no dispute that *Sherman I* was voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), a circumstance not contemplated by § 1367(c), Sherman's federal constitutional claims must have accrued on or after January 12, 2009.

ii.  *The First Amendment Claim Time Bar[11]*

At the outset, Plaintiff's First Amendment claims do not constitute a continuing violation because they are based on identifiable, discrete acts by the Town that were readily discerned by Sherman at the time the acts were taken.  As the Circuit noted in *Deters v. City of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005), "[t]he Supreme Court recently clarified that the continuing-violations doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that "cannot be said to occur on any particular day."  (citation omitted).  The *Deters* court concluded that "[t]he mere fact that the effects of retaliation are continuing does not make the retaliatory act a continuing one."  Thus, in order to be timely, Sherman must plausibly allege a retaliatory act within the applicable limitations period, i.e., on or after January 12, 2009.  *Id.*  Here, Sherman plausibly alleges that after he filed his first federal complaint and later amended it in 2010,[12] "for many months . . . during 2009, 2010, and 2011 . . .

---

[10] Sherman cites no contrary case authority.

[11] This Court previously dismissed Sherman's First Amendment freedom of religion claim as frivolous, *see* March 2013 Order at 16; a determination that he did not challenge on appeal.  The Circuit Court also noted that Sherman's allegations that the Town discriminated against him because he was Jewish were "insufficient."  *Sherman*, 752 F.3d at 567.  Accordingly, the only basis for Sherman's First Amendment claim is pursuant to the petition clause.

[12] The Court does not construe Sherman's subdivision application, nor his subsequent revised applications, to be "petitions" for First Amendment purposes.  *Ridgeview Partners, LLC v. Entwhistle*, 227 Fed. App'x 80, 82 (2d Cir.

[t]he Planning Board . . . refused to allow him on its agenda, or appear otherwise."  Compl.

¶ 383.  Thus, his claim survives if it otherwise states a claim.  Here, Sherman has stated a

plausible First Amendment retaliation claim.

### iii.    First Amendment Retaliation Claim

To plead a First Amendment retaliation claim, a plaintiff must show: "(1) he has a right

protected by the First Amendment; (2) the defendant's actions were motivated or substantially

caused by his exercise of that right; and (3) the defendant's actions caused him some injury."

*Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir.2013).  On a motion to dismiss, the court

"must be satisfied that such a claim is supported by specific and detailed factual allegations,

which are not stated in wholly conclusory terms."  *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005)

(internal quotation marks omitted).

In the Second Circuit, the viability of a prima facie First Amendment retaliation claim

depends on the factual circumstances giving rise to the claim.  *Zherka v. Amicone*, 634 F.3d 642,

643 (2d Cir. 2011); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)

("We have described the elements of a First Amendment retaliation claim in several ways,

depending on the factual context.") (citations omitted).  "Private citizens alleging retaliation for

their criticism of public officials" are generally required to show that "they engaged in protected

speech, persons acting under color of state law took adverse action against them in retaliation for

that speech, and the retaliation resulted in 'actual chilling' of their exercise of their constitutional

right to free speech."  *Zherka*, 634 F.3d at 643.  To prove the "actual chilling" element, it is not

enough for the plaintiff to show that she changed her behavior in some way; she "must show that

---

2007) (site-plan application does not purport "to complain to public officials [or] to seek administrative [or] judicial relief from their actions").

the defendant intended to, and did, prevent or deter [her] from exercising [her] rights under the

First Amendment."  *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012),

*aff'd*, No. 12 Civ. 1811 (JSR), 2013 WL 1876610 (2d Cir. 2013).

However, in other private citizen cases, various forms of concrete harm have been

substituted for the "actual chilling" requirement.  *Zherka*, 634 F.3d at 643, 645-46; *see also*

*Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (chilling element is

required only "in cases where a plaintiff states no harm independent of the chilling of his

speech"); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371

(S.D.N.Y. 2011) (deeming allegations of retaliatory denial of building permits and a denial of an

unconditional variance sufficient concrete harms to substitute for chilling effects); *Hafez*, 894 F.

Supp. 2d at 222 (citing *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994)) (alleging

harm in the form of municipal defendants' misapplication of zoning code in retaliation for

plaintiffs' exercise of free speech right).

Where a plaintiff has sufficiently alleged a concrete harm, and in the absence of a

subjective chilling requirement, Second Circuit courts have only required a showing (1) that the

First Amendment protected the plaintiff's conduct, and (2) that "defendants' conduct was

motivated by or substantially caused by [the plaintiff's] exercise of speech."  *Hafez*, 894 F. Supp.

2d at 222 (citing *Gagliardi*, 18 F.3d at 194) (citation omitted); see also *Tomlins*, 812 F. Supp. 2d

at 371 n.11.  In light of the Circuit Court's opinion that the Town "singled out Sherman's

development, suffocating him with red tape" over the course of a decade to "make sure he could

never succeed in developing MareBrook," *Sherman* 752 F.3 at 565, that showing would appear

to be easily met here.  *See Tomlins*, 812 F. Supp.2d 357, 375 (noting that where there is evidence

that the defendant engaged in an "ongoing course of adverse action" against the plaintiff, such

action may serve as additional evidence of retaliatory intent); *see, e.g.*, *Economic Opportunity Commission*, 106 F. Supp.2d 433, 437 (E.D.N.Y. 2000) ("[A] plaintiff can also show retaliatory intent by establishing . . . an ongoing campaign of adverse action."); *Hous. Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 426 (S.D.N.Y. 1999) ("Evidence of a 'pattern of antagonism' or of prior retaliatory conduct may serve as circumstantial evidence of retaliation."); *cf. Gagliardi*, 18 F.3d at 195 (motive adequately alleged by evidence that Village repeatedly refused plaintiffs' requests to enforce zoning codes and ordinances over a nine-year period).  Sherman has established the requisite nexus.

Accordingly, the Town's motion to dismiss the First Amendment retaliation claim is DENIED.

### iv.   *Due Process Claims Time Bar*

As with his First Amendment claims, Sherman's due process claims do not constitute a continuing violation because they too are based on discrete acts by the Town that were readily discerned by Sherman at the time the acts were taken.  *Deters*, 150 F. App'x at 12; *Libbey v. Village of Atlantic Beach*, 982 F. Supp.2d 185, 212 (E.D.N.Y. 2013) ("where . . . [p]laintiffs can identify particular periods of time and circumstances . . . they have merely alleged isolated acts, which [p]laintiffs could have recognized as actionable at the time); *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (a claim arising under § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action").  Because the cognizable acts that he relies on all took place prior to January 12, 2009, his due process claims are barred.  *See Fair Housing in Huntington Comm. V. Town of Huntington*, 2010 WL 2730757 (E.D.N.Y. July 8, 2010) (finding no continuing violation where harms arose out of discrete decisions of the zoning board beyond the statutory period).  However, even if the Court were to consider them on the merits, both the procedural and substantive due process claims would still

fail.

> v.    *Procedural Due Process Claim*

In order to bring a claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, a plaintiff must show "(1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rankel v. Town of Somers*, 999 F. Supp.2d 527, 545 (S.D.N.Y. 2014); *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F.Supp.2d 643, 656 (E.D.N.Y. 2009); *accord Nnebe v. Daus,* 644 F.3d 147, 158 (2d Cir. 2011).   A party asserting a deprivation of due process must first establish a property interest within the meaning of the Constitution.   In the context of a zoning dispute, the party must demonstrate that it had a valid property interest in a benefit protectable under the Fourteenth Amendment at the time of the alleged deprivation.   *See Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995).

To possess a federally protected property interest, a person must have a "legitimate claim of entitlement to it."   *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Zahra*, 48 F.3d at 680 (quoting *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 915 (2d Cir.), *cert. denied*, 493 U.S. 893 (1989)), and *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985)).   Such a claim does not arise from the Constitution, but rather from an independent source such as state or local law.   *See id.; Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996); *G.I. Home Developing Corp. v. Weis*, No. 07-CV-4115 (DRH), 2009 WL 962696, at *5 (E.D.N.Y. Mar. 31, 2009).   "An abstract need, desire or unilateral expectation is not enough."   *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) (citing *Roth*, 408 U.S. at 577).   In addition, as a matter of law, a party has "no assurance that the zoning regulations [will] remain unchanged."   *Sag Harbor Port Assocs. v. Village of Sag Harbor*, 21 F. Supp.2d 179, 183 (E.D.N.Y.1998), *aff'd*, 182 F.3d 901 (2nd Cir. 1999).   "The [strict entitlement]

analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." *Zahra*, 48 F.3d at 680 (collecting cases). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *RRI Realty*, 870 F.2d at 911.

It is beyond cavil that the Town here has vested the Town Planning Board with broad discretion to review subdivision applications. *See* New York Town Law § 276; *see also Masi Management, Inc. v. Town of Ogden*, 180 Misc.2d 881, 691 N.Y.S.2d 706 (N.Y. Sup., 1999), *aff'd*, 273 A.D.2d 837, 709 N.Y.S.2d 734, 2000 N.Y. Slip Op. 06153 (N.Y.A.D. 4 Dept. Jun 16, 2000) ("Town Law § 276 . . . [has] been held to confer wide enough discretion on town officials to preclude a claim of entitlement sufficient to create a property interest cognizable under the substantive due process doctrine.") (citing *Honess 52 Corp. v. Town of Fishkill*, 1 F.Supp.2d 294, 304 (S.D.N.Y.1998)). Sherman does not argue otherwise. Instead, Sherman assumes that the Second Circuit's decision is dispositive on his due process claim and further argues that the due process violations—both procedural and substantive—are established through the administrative delay and concomitant expenses he suffered. His arguments are unavailing.

As the Second Circuit has recently held, failure to institute an Article 78 proceeding to mandamus the Town to act on his application forecloses a procedural due process claim based on delay. *See Nenninger v. Village of Port Jefferson*, 509 F. App'x. 36, 39 fn.2 (2d Cir. 2013) ("To the extent Nenninger argues that a failure to rule on his application—complete or incomplete— denied him procedural due process, the claim fails in any event because Nenninger was free to bring an Article 78 mandamus proceeding in New York State court.") (citations omitted)). As

the Town notes, Sherman's reliance on *Kuck v. Danaher*, 600 F.3d 159 (2d Cir. 2010), is

misplaced, as that case involved the issuance of a firearm under Connecticut law, and

specifically noted that the outcome might have been different under New York law because of

the discretion afforded by New York law to issue gun permits.

In addition, to the extent Sherman premises a due process violation on the expenses he

incurred in preparing his plan, the claim must fail because such a claim is generally not

recognized in New York.  *See Cedarwood Land Planning v. Town of Schodack Through*

*Schodack Planning Bd.*, 954 F.Supp. 513, 521 (N.D.N.Y. 1997) ("[i]t is well established that, as

a general rule, expenses incurred prior to the commencement of the actual construction do not

create a vested interest." (citing *McBride v. Town of Forestburgh*, 54 A.D.2d 396, 388 N.Y.S.2d

940, 942 (3d Dep't 1976); *Cooper v. Dubow*, 41 A.D.2d 843, 342 N.Y.S.2d 564, 566 (2d Dep't

1973)).

Moreover, Sherman has not established that he had a vested property interest in receiving

personal notice of zoning changes.  In *Alzamora v. Village of Chester*, 492 F. Supp.2d 425

(S.D.N.Y. 2007), this court considered a procedural due process challenge based on the Village's

failure to personally notify a landowner of proposed zoning changes.  The court held that absent

a vested interest in the property, such notice was not required:  "It is axiomatic that, '[u]nder

New York law, a property owner has no right to the existing zoning status of his land unless his

right has become 'vested.''"  492 F. Supp. at 430 (citing *DLC Mgmt. Corp. v. Town of Hyde*

*Park*, 163 F.3d 124, 130 (2d Cir.1998)).  In *DLC Mgmt. Corp.*, the Second Circuit explained the

requirements for establishing vesting:

> In order for a right in a particular zoning status to vest, a property
> owner must have undertaken substantial construction and must have
> made substantial expenditures prior to the enactment of the more
> restrictive zoning ordinance.  Where . . . there has been no

> construction or other change to the land itself," a property owner has no right to complete a project permitted under an earlier zoning classification.

163 F.3d at 130 (quoting *In the Matter of Pete Drown Inc. v. Town Board of the Town of Ellenburg*, 229 A.D.2d 877, 879, 646 N.Y.S.2d 205, 206 (3d Dep't 1996)) (internal citation and quotation marks omitted).  Because Sherman has not undertaken any construction on the property, he cannot establish entitlement to personal notice on the ground of a vested right.

Finally, while Sherman avers that he was specifically targeted by the Town, has not alleged, nor could he, that the zoning changes of which he complained *only* applied to his property.  Cf. Harris v. County of Riverside, 904 F.2d 497, 502 (9th Cir. 1990) (noting that zoning laws "would not ordinarily give rise to constitutional procedural due process requirements," but that singling out plaintiff's property there required personal notice).

vi.   *Substantive Due Process Claim*

To plead a substantive due process claim, a plaintiff must allege facts establishing (1) a cognizable property interest (2) that was invaded in an arbitrary and irrational manner.  *See O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262-63 (2d Cir. 1999).  A plaintiff must plead governmental conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez*, 401 F.3d at 93 (internal quotation marks omitted).  Moreover, "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."  *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (internal quotation marks omitted).

For the reasons stated in the preceding section, Sherman does not state a substantive due process claim because he is unable to establish a cognizable property interest.  But even

assuming that Plaintiff had a property interest, he fails to state a substantive due process claim because he has not alleged that the Town and its conspirators engaged in conduct that is "so egregious, so outrageous" as to shock the conscience. *Velez*, 401 F.3d at 93. Plaintiff asserts that the Town has failed to approve his application to develop his property in order (1) to make MareBrook a "de facto nature preserve," and (2) to retaliate against him for instituting several lawsuits against the Town over his application. These types of allegations of "improper motives" and "selective enforcement" on the part of municipal officials fall into the "non-conscience-shocking categor[y.]" *Ruston v. Town Bd. of Skaneateles*, No. 06–CV–927, 2008 WL 5423038, at *5 (N.D.N.Y. Dec. 24, 2008); *see Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285–86 (3d Cir. 2004). Plaintiff's incantation of the words "arbitrary and irrational" is insufficient. *See Twombly*, 550 U.S. at 555 ("formulaic recitations" of elements of claim "will not do"). Substantive due process does not forbid even "arbitrary or capricious" administrative conduct "correctable in state court." *See Ceja v. Vacca*, 503 F. App'x. 20, 21 (2d Cir. 2012) (summary order) (internal quotation marks omitted).

And even if this conduct were egregious, Plaintiff's claim would fail because the substance of his allegations mirror his First Amendment and takings claims, which have already been deemed to survive. *See Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F.Supp.2d 78, 100, No. 12–CV0397, 2013 WL 4774484, at *13 (N.D.N.Y. Sept. 04, 2013) (dismissing claim that "overlaps" with First Amendment, procedural due process and equal protection claims).

Accordingly, Sherman's procedural and substantive due process claims are DISMISSED.

vii.    *Equal Protection Claims*[13]

An Equal Protection claim accrues when the plaintiff "knows or has reason to know" of

the harm.  *See Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir. 1987), *cert. denied*, 483 U.S.

1021 (1987).  "[T]he proper focus is on the time of the discriminatory act, not the point at which

the consequences of the act becomes painful."  *Eagleston v. Guido*, 41F.3d 865, 871 (2d Cir.

1994) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).  In *Singleton v. City of New York*, 632

F.2d 185 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981), the Second Circuit noted:

> The crucial time for accrual purposes is when the plaintiff becomes
> aware that he is suffering from a wrong for which damages may be
> recovered in a civil action.  To permit him to wait and toll the
> running of the statute simply by asserting that a series of separate
> wrongs were committed pursuant to a conspiracy would be to enable
> him to defeat the purpose of the time-bar, which is to preclude the
> resuscitation of stale claims.

*Id*. at 192.  Here, Sherman's Equal Protection claims arise from discrete actions the Town is

alleged to have taken which treated his application differently from that of similarly situated

developers.  All of the cognizable actions, however, took place before January 12, 2009.  As with

the due process claims, moreover, this one would also fail if not barred.

The Equal Protection clause of the Fourteenth Amendment commands that "all persons

similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473

U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  As a preliminary matter,

Sherman premises his Equal Protection claim, in part, on his status as a Jewish developer, and

animus against the Jewish religion.  Compl. ¶¶ 422-434.  As indicated above, *supra* fn.10, this

Court previously dismissed his First Amendment freedom of religion claim as frivolous, and the

---

[13] Sherman premises his Equal Protection claim, in part, on his status as a Jewish developer, and animus against the Jewish religion.  Compl. ¶¶ 422-434.  As indicated above, *supra* fn.10, this Court has previously dismissed his First Amendment freedom of religion claim as frivolous and the Second Circuit deemed his allegations that he was discriminated against because he was Jewish as "insufficient."  *Sherman*, 752 F.3d at 567.

Second Circuit deemed his allegations that he was discriminated against because he was Jewish as "insufficient." *Sherman*, 752 F.3d at 567.  Specifically, the Circuit noted:

> He states that the "municipal Defendants" knew that he was Jewish, and that at a Town Board meeting, he heard Town citizens express fear that MareBrook might become a "Hassidic Village" like the nearby Kiryas Joel.  He also alleges that a "model home was vandalized with a spray-painted swastika." However, none of this is linked to any Town official.  Nor does he allege that any similarly situated non-Jews were treated differently.

*Id*.  Accordingly, for the same reasons his First Amendment and § 1982 claims fail, his Equal Protection claim must also fail to the extent it alleges discrimination based on religion.

Plaintiff also bases his Equal Protection claim on a "class of one" theory," which consists of:  (1) intentional disparate treatment, (2) from other similarly situated individuals, (3) without a rational basis for the difference in treatment, and (4) without otherwise claiming membership in a particular class or group.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The Court of Appeals has made clear that, in a "class of one" case, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  That is because, in such cases, similarity "is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."  *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds by *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam).  A plaintiff is required to show that (1) "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy;" and (2) "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the

defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

In order to adequately allege an equal protection claim on a "class of one" theory, a plaintiff must demonstrate (1) that he was "intentionally treated differently from others similarly situated," and (2) "that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*); *see also Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2010) (examining Olech's reasoning and determining that it does not apply to public employment cases). Stated differently, a plaintiff asserting a "class of one" equal protection claim must allege that the intentional disparate treatment was "wholly arbitrary" or "irrational." *Aliberti v. Town of Brookhaven*, 876 F. Supp. 2d 153, (E.D.N.Y. 2012) (citing Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)). The Second Circuit has made clear that both elements of a "class of one" equal protection claim—intentional disparate treatment and lack of rational basis—must be analyzed by comparing the plaintiff to those who are similarly situated. *Neilson*, 409 F.3d at 105.

Without adequate comparators, it is impossible to determine whether there was a legitimate basis for the alleged disparities between Defendants' specific actions with respect to Plaintiff's property and purportedly similar properties or developers. As the Town points out, Sherman utterly fails to identify a *single* other developer that is sufficiently similar to him in terms of the size, nature and scope of the proposed project, or who was subject to the same regulatory regime, much less any other developer with the requisite extremely high degree of similarity to him or his property. *See* Pl.'s Reply Mem. (Doc. 37) at 16; *see also Adam J. v. Village of Greenwood Lake*, 10-CV-1753 (CS), 2013 WL 3357174, at *7 (S.D.N.Y. 2013) (dismissing "class of one" claim where developer failed to identify comparator developing a

project that was "identical in all relevant respects" to his own).  Plaintiff concedes as much,

acknowledging, for example, that his proposal included an on-site golf course and other

recreational facilities while the others did not,[14] and that other developers were subject to

different zoning requirements.  Pl.'s Mem. 27.  Since Plaintiff is unable to identify materially

similar, let alone identical comparators, the Court's analysis cannot proceed.  Given that Plaintiff

has failed to show "an extremely high degree of similarity between themselves and the persons

to whom they compare themselves[,]"  *Clubside*, 468 F.3d at 159, he cannot sustain an equal

protection claim under a "class of one" theory.

Finally, to the extent Sherman bases his Equal Protection Claim on so called

"exclusionary zoning," that claim also fails.  As the Town points out, even if the claim were

cognizable,[15] the only zoning changes at issue were passed between 2003 and 2007, well beyond

the limitations period.

Accordingly, Sherman's Equal Protection claim is DISMISSED.

## C.  Sherman's State Claims

Sherman's sixth through eighth causes of action allege violations of the New York State

Constitution;[16] ultimately each one fails on one or more bases.  First, his state constitutional

claims were subject to the notice requirements of General Municipal Law §§ 50-e and 50-i and

Town Law § 67.  Sherman did not file his notice of claim until October 6, 2011.  *See* Cardoso

Dec. Ex. DD.  Thus, his Equal Protection, due process and freedom of religion claims are barred

---

[14] Though Sherman calls this a "distinction without a difference."  Plf.'s Mem. 27.

[15] The claim would also fail because it was not included in the notice of claim as required by Town Law § 67.  *See* Notice of Claim submitted by Steven M. Sherman, Exhibit DD to the Declaration of Anthony Cardoso ("Cardoso Dec.") (Doc. 22); *see also Montano v. City of Watervliet*, 47 A.D.3d 1106, 1111 (3d Dep't 2008).

[16] The sixth cause of action alleges a violation of the Equal Protection clause.  Compl. ¶¶ 444-47.  The seventh cause of action alleges violations of freedom of religion, due process and the right to petition.  *Id.* at ¶¶ 448-52.  The eighth cause of action alleges a violation of the takings clause.  *Id.* at ¶¶ 453-56.

to the extent, as here, that they accrued nintey days prior the filing of the notice.  Second, the

equal protection, exclusionary zoning and spot zoning claims are nowhere included in the notice,

*id.*, thereby divesting this Court of subject matter jurisdiction over those claims.  *423 S. Salina*

*St. v City of Syracuse*, 68 N.Y.2d 474, 488-89 (N.Y. 1986), *cert. denied*, 481 U.S. 1008 (1987).

Third, there is no private right of action for violations of the New York State Constitution where,

as here, alternative remedies exist pursuant to, for example, 42 U.S.C. § 1983 and Article 78.

*See Flores v. City of Mount Vernon*, 41 F. Supp.2d 439, 447 (S.D.N.Y. 1999) (finding no private

right of action for violations of the New York State Constitution where a plaintiff has alternative

damage remedies available § 1983); *see also Ken Mar Dev., Inc. v. Dep't of Pub. Works of City*

*of Saratoga Springs*, 53 A.D.3d 1020, 1025, 862 N.Y.S.2d 202, 206 (3d Dep't 2008) (finding the

injunctive and declaratory relief available to petitioner pursuant to CPLR article 78 provides an

adequate alternative remedy, rendering the recognition of a constitutional tort unnecessary to

effectuate the purposes of the State constitutional protections).  Finally, because Sherman's

complaints concern the exercise of discretionary acts, the Town is entitled to immunity from his

state law claims.  *Haddock v. City of New York*, 75 N.Y.2d 478, 484 (1990) (*citing, Tango v.*

*Tulevich*, 61 N.Y.2d 34, 40 (1983).

Accordingly, all of Sherman's state law claims are DISMISSED.[17]

**D.  Laroe's Motion to Intervene**

Laroe has moved to intervene as a matter of right pursuant to Rule 24(a)(2) or,

alternatively, permissively, pursuant to Rule 24(b).  Rule 24(a)(2) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who
> . . . claims an interest relating to the property or transaction that is
> the subject of the action, and is so situated that disposing of the
> action may as a practical matter impair or impede the movant's

---

[17] Sherman requests leave to re-serve the notice of claim or to deem it timely *nunc pro tunc*.  For the reasons set forth above, granting the request would be futile.

ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Intervention as a matter of right requires an applicant to: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action. *Grewal v. Cueno*, No. 13 Civ. 6836 (RA) (HBP), 2014 WL 2095166, at *3 (S.D.N.Y. May 20, 2014) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000)). Rule 24(b) also provides for permissive intervention "[u]pon timely application . . . when an applicant's claim or defense and the main actions have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). Substantially the same factors as intervention of right are considered in determining whether to grant an application for permissive intervention pursuant to Rule 24(b)(2). *Grewal*, 2014 WL 2095166, at *3 (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003)).

Laroe contends that by virtue of its status as contract vendee, it has equitable title in the property, which it claims to be "synonymous with true ownership" under New York law. Laroe Reply Mem. L. 2. Defendants, on the other hand, argue that Laroe's intervention in this case would be futile because contract vendees lack standing to assert a takings claim, and that Laroe did not in fact have equitable title to the property. Defs. Opp. Mem. L. 9, 11.

Although legal futility is not mentioned in Rule 24, courts have held that futility is a proper basis for denying a motion to intervene. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008) (citing sources). In determining whether the proposed intervention is futile, the Court must view the application on the tendered pleadings—that is, whether those

pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits. *Id.* (quoting *Williams & Humbert, Ltd. v. W & H Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988)). Thus, in considering the sufficiency of Laroe's proposed complaint, the Court employs the same standards as it would apply in considering a motion to dismiss for failure to state a valid claim. *Id.* Specifically, the Court must accept all allegations in the proposed complaint as true; it is not required, however, to accept as true conclusory allegations or a legal conclusion couched as a factual allegation. *Id.* (internal quotation marks and citations omitted).

The Second Circuit has held that "[o]nly the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred." *U.S. Olympic Comm. v. Intelicense Corp., S.A.*, 737 F.2d 263, 268 (2d Cir. 1984) ("USOC"); *see also Fitzgerald v. Thompson*, 353 F. App'x 532, 534 (2d Cir. 2009) (summary order) (citing *id.* for the same), *cert. denied*, 561 U.S. 1038 (2010). Accordingly, courts in this Circuit have found that contract vendees lack standing to assert a takings claim. For example, in *R & V Development, LLC v. Town of Islip*, No. 05 Civ. 5033 (DRH), 2007 WL 14334, at *1 (E.D.N.Y. Jan. 3, 2007), the plaintiff alleged that he was a vendee to a contract for the purchase of a parcel of real property in Islip, New York, and that the town zoning board had denied his application for a variance for single-family housing on the property. The court relied on *USOC* to dismiss the takings claim on the basis of the plaintiff's status as contract vendee rather than property owner at the time of the alleged taking. *Id.* at *2. Similarly in *Gebman v. New York*, No. 07 Civ. 1226 (GLS), 2008 WL 2433693, at *1 (N.D.N.Y. June 12, 2008), the plaintiff alleged various injuries from a corporation's sale of real property to the City of Beacon. There, "ownership [was] not in dispute" because plaintiff, by his own admission, was "a contract vendee holding interest in the

27

development of parcels . . . downstream." *Id*. at *4 (internal quotation marks and citation omitted). The court observed that while the defendant had not cited any authority for the proposition that only an owner of property may assert a takings claim, that proposition appeared to be a correct statement of law based on the Second Circuit's holding in *USOC*. *Id*. at *5. The court therefore concluded that the plaintiff lacked standing as a contract vendee to assert a takings claim and dismissed the cause of action. *Id*.

Laroe has not provided any reason to depart from the reasoning of *R & V Development* and *Gebman*.[18] First, even if Laroe had equitable title in the property based on the execution of his agreement with Sherman in 2003, such status would have established a legal relationship between Laroe and Sherman, but not between Laroe and Defendants. *See Kendle v. Town of Amsterdam*, 36 A.D.3d 985, 986 (3d Dep't 2007) ("Execution of a land sale contract provides the purchaser with equitable title to the property. It creates privity and duties between the purchaser and seller but not between an equitable title holder and third parties.") (internal citation omitted). Second, Laroe repeatedly acknowledges in his proposed complaint and papers that he was a contract vendee at the time of the alleged taking. *See, e.g.*, Laroe Compl. ¶ 86 (stating that Laroe "became contract vendee of MareBrook and Other Projects in order to create a reasonable residential development."); Laroe Mem. L. 6 ("In New York, a land contract vendor [Sherman] holds legal title, while the land contract vendee [Laroe] holds equitable title."); *id.* at 7 ("[H]olding equitable title gives the land contract vendee full rights of ownership."); Laroe Reply Mem. L. 6 ("[U]nder New York law, a contract vendee is the true owner."). Accordingly, based on the Second Circuit's clear guidance in *USOC*, Laroe does not have standing to bring a takings

---

[18] Laroe's attempts to distinguish *R & V Development* and *Gebman* are both superficial and unavailing. *See* Laroe Reply Mem. L. 6, 7 (stating, *inter alia*, that *R&V* "presents a clear example of the maxim 'bad lawyering produces bad law,'" and that the Court is not bound by the rulings of either case).

claim based on its status as contract vendee to the property.[19]   Laroe's motion to intervene is

therefore DENIED.[20]

---

[19] Laroe's reliance on *Johnson v. State*, 10 A.D.3d 596 (2d Dep't 2004), for the argument that it should have standing here because this case presents issues analogous to a condemnation is unavailing.  In that case, the Second Department noted that a claimant seeking compensation for condemned property may, in appropriate circumstances, seek recovery by demonstrating an equitable interest therein as opposed to legal title.  *Id.* at 597.  However, the fact that this is a takings case and not a condemnation proceeding is not merely "a distinction without a difference," *see* Laroe Mem. L. 8, and the Court is persuaded by the above cases denying standing to contract vendees in this context.

Moreover, the various documents Laroe has submitted in support of its motion only confirm that standing is inappropriate here.  First, the sale of the property from Sherman to Laroe, as set forth in the original agreement between the parties (the "Agreement"), was expressly conditioned on Sherman's procurement of the approvals and permits from the planning board.  *See, e.g.*, Affirmation of Joseph J. Haspel ("Haspel Aff."), Ex. D ("2003 Contract of Sale"), § 4(A); id. at § 19 (stating that closing of title would be conditioned on the authorization of the planning board).  Second, the April 25, 2012 arbitration ruling issued by the Rabbinical Court of Mechon L'Hoyroa, which—according to Intervenor-Applicant—"gave Laroe full rights in the Real Property," postdated Sherman's commencement of the instant action.  Laroe Mem. L. 6.  Accordingly, because only the owner of an interest in a property at the time of the alleged taking has standing on a takings claim, Laroe's late-filed arbitration ruling cannot save the instant motion.  *See* Haspel Aff., Ex. F ("Arbitration Ruling") ("Being that Mr. Steven Sherman failed to pay [Laroe] the amount of $2,500,000, therefore, as of today, the aforementioned properties belong to [Laroe], and [it is] the sole owner[] of the aforementioned properties.").  Additionally, in a May 7, 2013 settlement agreement, Laroe and Sherman modified the terms of the Agreement so that closing under the Agreement would occur upon the release of TD Bank's mortgages encumbering the property.  *See* Haspel Aff., Ex. E ("2013 Settlement Agreement"), § 6; Laroe Mem. L. 5 ("Notwithstanding the parties [sic] acknowledgment of full payment by Laroe, in order to protect Laroe, closing would not occur until the foreclosure proceeding was resolved.").  Finally, as the Referee Report of Sale makes clear, the TD Bank foreclosure sale occurred on May 21, 2014, when the bank—not Laroe—took ownership of the property.  Haspel Aff., Ex. H, § 7.

[20]   In addition, even if the instant motion were not futile, it is not clear that it satisfies Rule 24's timeliness requirement.  The timeliness of an intervention motion is a matter left to the district court's discretion.  *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013).  In determining timeliness, the Court may consider, *inter alia*:  (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to the existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness.  *Id.* (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)).  "While the Court may consider . . . 'the point to which the suit has progressed' to determine timeliness, that factor is not dispositive.'"  *Id.* (quoting *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)).

Here, Laroe claims that it made the instant application at its "earliest opportunity."  Laroe Mem. L. 11.  However, its own papers cast doubt on that assertion.  According to Laroe, it learned about the case after Defendants initially moved to dismiss.  *Id.*  But, "[b]ased upon the issues presented in the Motion to Dismiss, Laroe determined to await the outcome of the motion before taking any action."  *Id.*  Accordingly, by Laroe's own admission, it filed the instant motion well over one year after it had knowledge of its interest in the case, and almost two and a half years after the commencement of the litigation.  However, given the conclusion that the instant motion would be futile, the Court need not decide whether it was timely.

### III.     Conclusion

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  Laroe's motion to intervene is **DENIED**.  The Clerk of the Court is respectfully requested to terminate the motions, Doc. 21 and Doc. 24.  The parties are directed to appear for a status conference on Wednesday, April 23, 2015 at 10:30.

It is SO ORDERED.

Dated: March 31, 2015
       New York, NY

_____
Edgardo Ramos, U.S.D.J.